UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J. CALLAHAN, ) | |
| L. DOUGLAS, ) | |
| R. PEACHER, ) | |
| Q. WELLS, ) | |
|             ) | |
|             Plaintiffs, ) | |
|             ) | |
|             v.             ) | No. 1:19-cv-03908-JMS-DML |
|             ) | |
| BRANDON MILLER Food Services Supervisor, ) | |
| Aramark Corporation, ) | |
| AMANDA COPELAND District Manager, ) | |
| Aramark Corporation, ) | |
| ARAMARK CORPORATION, ) | |
|             ) | |
|             Defendants. ) | |

**ENTRY DENYING MOTION FOR SUMMARY JUDGMENT
ON THE ISSUE OF EXHAUSTION OF ADMINISTRATIVE REMEDIES**

**I. Background**

Plaintiffs Callahan, Douglas, Peacher, and Wells, inmates at the Pendleton Correctional Facility (Pendleton), filed this civil rights action on September 13, 2019. Their amended complaint was filed on December 2, 2019. Dkt 28. The defendants in this action are Brandon Miller, Food Services Supervisor, Amanda Copeland, District Manager, and Aramark Corporation. The plaintiffs allege that the defendants have issued them plastic ware for eating but have refused to provide them ways to sanitize and protect the utensils, disregarding the plaintiffs' health and safety. They allege that having to carry the plastic ware around the prison has caused them all to become ill and suffer physical pain.

The defendants have moved for summary judgment seeking resolution of the claims brought by three of the four plaintiffs on the basis that those plaintiffs failed to exhaust their available administrative remedies before filing this action. Dkt. 36. For the reasons explained in this Entry, the defendants' motion for summary judgment must be **denied.**

## II.  Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *See Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some

orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA." *Lanaghan v. Koch,* 902 F.3d 683, 687 (7th Cir. 2018). "Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015); *see also Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

### III. Discussion

#### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to the plaintiffs as the non-moving parties with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

#### 1. Grievance Process

Every inmate is provided with a copy of the Indiana Department of Correction (IDOC) Offender Grievance Process in their Admission & Orientation paperwork when they first enter Pendleton. Dkt. 37-1, ¶ 6. Moreover, copies of the Offender Grievance Process are made available to inmates at Pendleton's law library. *Id.*

The Offender Grievance Process consists of the following four steps:

1. First, an offender must attempt to resolve his grievance informally through officials at the facility. Dkt. 37-2, § X.

2. Second, if the offender is unable to obtain a resolution informally, the offender may submit a formal grievance to the Offender Grievance Specialist. *Id.*, § XI. The appropriate form for submitting grievances (State Form 45471, OFFENDER GRIEVANCE) is available upon request from any staff member at the facility. Dkt. 37-1, ¶ 10.

3. Third, if the formal grievance is not resolved in a manner that satisfies the offender, the offender may submit an appeal (Level 1) within five (5) business days from the date of receipt of the grievance response. Dkt. 37-2, §§ XII, XIII.

4. Fourth, if the offender is not satisfied with the Level 1 appeal response, the offender may request that the appeal be sent to Central Office, Department Offender Grievance Manager, for a Level II appeal, which is the final appeal level. *Id.*, §§ XII, XIII.

The Offender Grievance Process is not complete until the inmate completes all levels of the appeal process. Dkt. 37-1, ¶ 13.

**2. Mr. Callahan's Grievances**

On August 30, 2019, Mr. Callahan submitted a grievance related to the allegations in this lawsuit. *Id.* at ¶ 18; dkt. 37-6 at 2. The grievance stated:

> Informal grievance sent to Food Service Supv. Brandon, Asst. Food Service Supv's Debbie and Kelcie via Asst. Supt. D. Alsip. As of this date, which is five (5) business days since the lockdown ended, no response has been received. (copies attached)

4

> My complaint is that Aramark has issued me a spork and drinking cup to consume my meals with, but will not advise me how to sanitize these items for safe use, nor provide me with the capability to sanitize these items for safe use since I am unable to, or for that matter how to properly keep them sanitary when required to hand-carry these items throughout the facility prior to attending a meal, whether it is a medical pass, a religious count letter, a recreation line or a work assignment. These are all places I am expected and/or required to attend, and must hand-carry my spork and cup with me to these places, none of which is equipped to safely store my items or put them in a sanitary place while there, and I have no way to sanitize them prior to eating no matter where I am in the facility. I have experienced sore throat and nasal infections that have required medical treatment since using these unsanitized items and my health has suffered. This has been at my expense in order for Aramark to save money by not providing me with a clean and sanitized spork and cup to use for each meal, which I need in order to eat my meals without being unduly and unsafely exposed to pathogens and contaminants.

Dkt. 37-6 at 2.

For relief, Mr. Callahan sought:

1) Sanitized and clean spork and cup provided at each meal, <u>or</u>
2) All materials and supplies required to properly clean and sanitize these items provided so I can clean and sanitize them myself prior to eating.
<u>And</u>
3) Sanitary zip-lock bags to carry my cup and spork in when going to a meal,
<u>And</u>
4) $5,000 compensation for pain and ongoing suffering from forced use of unsanitary sporks and cups.

*Id*.

The "date of incident" box on the form was filled in with "Ongoing; Informal grievance sent 8-13-19 during lockdown, off lockdown 8-19-19." *Id.*

On August 30, 2019, Christina Conyers, the Grievance Specialist at Pendleton, rejected Mr. Callahan's grievance for two reasons. *Id.* at 1. The Return of Grievance stated that "[t]he grievance form is not properly filled out. You can only have 1 date per grievance. Complete the form and submit it again within five (5) business days." *Id*. The second reason stated for the rejection was "Other: Per AP 00-02-301 Sect. IV. B #12 Tort claims seeking monetary compensation are a non-

grievable issue[.]" *Id*.

On September 10, 2019, Mr. Callahan resubmitted the same grievance. *Id.* at 9. That same day, Ms. Conyers rejected the grievance for two reasons: first, because it "contains multiple issues or events. You may separate the issues and submit a separate form for each one that you wish to grieve." *Id.* at 8. The second reason was "Other: Per AP 00-02-301 Sect. IV. B #12 Tort claims seeking monetary compensation are a non-grievable issue." *Id*.

That same day, Mr. Callahan also submitted a grievance appeal. *Id.* at 7. In his appeal he asserted that his grievance was properly filled out and this matter is in accordance with AP 00-02-301 IV.A. 1 § 5. *Id.* He further stated that "the Grievance Specialist failed to follow policy in respect to my grievance by rejecting it in violation of AP 00-02-301. IV." *Id*. Ms. Conyers rejected the appeal, stating that "[y]our grievance must be accepted, logged & filed prior to submitting an appeal." *Id.* at 6.

### 3. Mr. Douglas' Grievances

A "request for interview" dated August 23, 2019, sent by Mr. Douglas to Brandon, Aramark Food Service, Supv., asked how he could sanitize his spork and cup when he has to hand-carry it to all locations before eating. Dkt. 37-7 at 3.

On September 5, 2019, a grievance was received from Mr. Douglas related to the allegations in his lawsuit. The grievance, dated August 23, 2019, stated the following:

> I've gotten sick from using the Aramark spork and cup. I can't properly clean and sanitize it. I've asked Aramark how I'm suppose [sic] to sanitize this spork and cup and I was not answered. I have to walk around on passes with this spork and cup and no way to keep it clean and I continue to get sick from these unsanitary items. Just because I'm the only person to use it doesn't mean it doesn't have germs, bacteria, etc. from having to take it to places on passes. Aramark shouldn't be doing this if they did not have a way for me to sanitize these items instead of trying to save money to increase profits.

*Id*. at 2.

For relief, Mr. Douglas stated that he sought:

1) Means, supplies to regularly sanitize and clean the spork and cup;

2) Means to transport the spork and cup in a sanitary way around the facility;

3) $7,500 for regularly making me have sore throats and making me sick.

*Id*.

On September 5, 2019, Ms. Conyers rejected Mr. Douglas' grievance for a single reason: "Other: Per AP 00-02-301 Sect. IV. B #12 Tort claims seeking monetary compensation are a non-grievable issue." *Id.* at 4, 12.

On September 5, 2019, Mr. Douglas resubmitted the same grievance, which Ms. Conyers received on September 6, 2019, and rejected on September 9, 2019, for the same single reason. *Id*. at 5, 4.

On September 10, 2019, Mr. Douglas submitted the same grievance a third time. *Id*. at 10. That same day, Ms. Conyers rejected Mr. Douglas' grievance for three reasons, two of them not asserted before: 1) there was no indication that he tried to informally resolve his complaint; 2) "[t]here is not enough information in this form to warrant an investigation. Please provide this additional information: Per AP 00-02-301, 'an offender is required to attempt to resolve a complaint informally and provide evidence of the attempt.'"; and 3) "Other:  Per AP 00-02-301 Sect. IV. B #12 Tort claims seeking monetary compensation are a non-grievable issue." *Id.* at 9.

Mr. Douglas submitted grievance appeals on September 6 and 10, 2019. *Id*. at 8, 14. Ms. Conyers rejected both appeals because grievances "must be accepted, logged & filed prior to submitting an appeal." *Id.* at 7, 13, 15.

7

**4. Mr. Peacher's Grievances**

On July 2, 2019, a grievance was received from Mr. Peacher related to the allegations in his lawsuit. Dkt. 37-8 at 2. The grievance, dated July 1, 2019, stated the following:

> On 6/23/2019 I used the issued spoon/spork and cup from Aramark. I tried cleaning it with the water in my cell's sink. It did not work. After using the spork a second time that day my throat began to swell. I contacted Aramark on how to keep this spork clean when I have to travel everywhere with it. It is unsanitary. They have not provided me any way to clean these utensils. So, now I've gotten a swollen throat. I've had to see medical/sick call who confirmed I likely had some type of toncilitus [sic]. This is ridiculous. The only change to my routine in getting sick is this spork and cup. I've now had to take medications to deal with this. I shouldn't have to get sick and get medication because Aramark wants to save money by issuing a spork and cup and no way for me to keep it clean. Informal grievance attached.

*Id*.

For relief, Mr. Peacher asked for:

> A way to properly clean this spork and cup, cleaning supplies from Aramark if they want to issue me a spork and cup, and compensation for getting me sick, requiring me to have to go to medical to get care and medication.

*Id*.

The grievance was rejected on July 3, 2019, by Grievance Specialist Bodkin. *Id.* at 1. The reason the grievance was returned was, "[t]ort claims seeking monetary compensation is not part of the grievance process." *Id*. The rejection form informed Mr. Peacher that if he chose "to correct the problem(s) listed above, you must do so and re-submit this form within five (5) days." *Id.*

On July 5, 2019, rather than submit another grievance, Mr. Peacher submitted an appeal. *Id.* at 5. It was received on July 11, 2019. *Id.* He argued that the reason his grievance was denied was a "fabrication" because he "never put in my grievance, 'tort seeking monetary compensation.'" *Id*. He stated that it was "a constant example of Laura Bodkin denying me and other prisoners access to the grievance process rendering my grievance responsibilities exhausted." *Id.*

8

In response to the appeal, Ms. Bodkin issued a Return of Grievance form dated July 13, 2019, denying the appeal for three reasons: First, "[t]his complaint seems to be submitted on behalf of another person or a group. This type of grievance is not permitted." Second, "[t]here is not enough information in this form to warrant an investigation. Please provide this additional information: You must follow AP 00-02-301 to have your grievances processed. Return of Grievance Form is so you can correct the problems and resubmit so your grievances can be processed." Third, "[y]our grievance must first be accepted, logged, and filed prior to submitting an appeal." *Id.* at 4.

Another Return of Grievance was issued on the same day, July 13, 2019, stating that the grievance was rejected for "Other: Tort claims seeking monetary compensation is not part of the grievance process." *Id.* at 7.

On July 15, 2019, Mr. Peacher attempted to complete the appeal process by submitting a second appeal. *Id.* at 11, 12. It was received July 17, 2019. *Id.*

### B. Analysis

The defendants contend that plaintiffs Callahan, Douglas, and Peacher failed to complete the grievance process before filing this lawsuit. In response, the plaintiffs argue that their grievance submissions were rejected for "false and invalid" reasons, making the process unavailable to them. Dkt. 40 at 1. *See Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016). The plaintiffs' position is well-founded.

In *Ross*, the Supreme Court described "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or

9

consistently unwilling to provide any relief to aggrieved inmates." *Id*.

The second type of unavailability is when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. "[W]hen a remedy is … essentially unknowable—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id*. (internal quotation omitted).

The third example is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860. "In *Woodford,* we recognized that officials might devise procedural systems (including the blind alleys and quagmires just discussed) in order to trip[ ] up all but the most skillful prisoners." *Id*. (internal quotation omitted).

The common reason all three plaintiffs' grievances were rejected was because "[t]ort claims seeking monetary compensation is not part of the grievance process." The plaintiffs argue persuasively that their claims are appropriate to grieve. They point out that Part VI of the Offender Grievance Process provides that: "No grievance shall be rejected because an offender seeks an improper or unavailable remedy, except that a grievance shall be rejected if the offender seeks a remedy to a matter that is inappropriate to the offender grievance process."  Dkt. 37-2 at § VI.

The Grievance Process further states:

"Examples of issues about which an offender may initiate the grievance process include, but are not limited to:

1. The substance and requirements of policies, procedures, and rules of the Department or facility (including, but not limited to, correspondence, staff treatment, medical or mental health, some visitation, and food service)."

*Id.* at § IV.A.

In this case, the plaintiffs complained informally and then through formal grievances that they had no proper and effective way to sanitize the plastic sporks and cups they were given by Aramark, and that as a result they were becoming ill. The Court finds that this lack of sanitation issue falls within the scope of "policies, procedures, and rules of the Department or facility" relating to medical health and food service. *Id.*

The Court acknowledges that the Grievance Process lists as an example of a non-grievable issue, "Tort Claims seeking monetary compensation," *id.* at § IV. B., but there is no evidence of record that any of the plaintiffs filed a Tort Claim notice in their attempts to resolve the lack of sanitation issue. The Grievance Specialist perhaps made a mistake in determining that each of the plaintiffs had filed a Tort Claim. However, the Grievance Process does not permit a grievance to be rejected simply because it seeks an "unavailable remedy." By rejecting grievances that were not based on Tort Claims, the process was rendered a "dead end" for the plaintiffs. *Ross*, 136 S. Ct. at 1859. To the extent it could be argued that the term "Tort Claim," even though it is capitalized in the Grievance Process, has a meaning broader than claims filed in accordance with the Indiana Tort Claims Act, then the process is thereby rendered "so opaque that it becomes, practically speaking, incapable of use." *Id.*

In addition to the Tort Claim basis for rejection, Mr. Callahan's initial formal grievance was returned because it was "not properly filled out. You can only have 1 date per grievance." Dkt. 37-6 at 1. Grievance Specialist Bodkin's affidavit stated that the grievance "included several dates which is against IDOC Offender Grievance Process." Dkt. 37-1 at ¶ 18.ii. The Court has carefully reviewed Mr. Callahan's grievance and cannot discern "several dates." *See* dkt. 37-6 at 2. The "date of incident" is designated as "ongoing." *Id.* This, however, is not a proper basis on

which to reject a formal grievance. "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Moreover, although grievances may only relate to "one event or issue," listing different dates to describe them is not expressly prohibited by the Grievance Process. *See* dkt. 37-2 at § XI, A. Here, the one issue asserted is the lack of sanitation which caused illness.

In addition, the defendants have not shown why the plaintiffs should not have been allowed to proceed with their appeals given that they disagreed with the rejection of their grievances. The Grievance Process provides:

> The offender shall be permitted to appeal the response to the Warden/designee if the offender disagrees with the formal response at the institution level.
>
> **The right to appeal is absolute and the offender shall not be informed otherwise or asked to waive this right.**

*Id*. at § XII (emphasis in original).

Because the reasons for rejecting the grievances are not supported by the terms of the Offender Grievance Process, the Court finds that the process was rendered unavailable to plaintiffs Callahan, Douglas, and Peacher. The PLRA has a "built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Ross*, 136 S. Ct. at 1855.

### IV. Rule 56(f) Notice and Further Proceedings

The defendants' motion for summary judgment, dkt. [36], is **denied**. Moreover, the record before the Court shows that plaintiffs Callahan, Douglas, and Peacher are entitled to summary judgment with respect to the defendants' affirmative defense of exhaustion. Therefore, pursuant to Federal Rule of Civil Procedure 56(f)(1), the Court gives the defendants notice of its intent to

grant summary judgment in favor of plaintiffs Callahan, Douglas, and Peacher on the exhaustion defense. The defendants shall have **through May 4, 2020**, in which to respond to the Court's proposal and either (a) show cause why summary judgment should not be entered in favor of plaintiffs Callahan, Douglas, and Peacher on this issue, or (b) withdraw their affirmative defense of exhaustion.

    **IT IS SO ORDERED.**

Date: 4/24/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

J. CALLAHAN
25714
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

L. DOUGLAS
202953
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

R. PEACHER
881627
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Q. WELLS
881139
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com