UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J. CALLAHAN, <br> L. DOUGLAS, <br> R. PEACHER, <br> Q. WELLS, <br><br> Plaintiffs, <br><br> v. <br><br> BRANDON MILLER, <br> AMANDA COPELAND, <br> ARAMARK CORPORATION, <br><br> Defendants. | No. 1:19-cv-03908-JMS-MG |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

For the reasons explained in this Entry, the Defendants' motion for summary judgment, dkt. [142], is **granted.**

**I. Background**

Plaintiffs, J. Callahan, L. Douglas, R. Peacher, and Q. Wells, are inmates at Pendleton Correctional Facility (Pendleton). The Court screened their Amended Complaint and allowed their Eighth Amendment claims to proceed against Defendants Brandon Miller, Amanda Copeland, and Aramark Corporation (Aramark), specifically, their allegations that "the use of plasticware and having to carry them around the prison caused them all to become ill and suffer physical pain" and that "the defendants refused to provide them products to sanitize and protect the utensils, disregarding the plaintiffs' health and safety." Dkt. 19 at 3 (Screening Entry).

Defendants' motion for summary judgment is now fully briefed and ripe for resolution.

1

## II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" designated evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, "the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a *genuine issue for trial*.'" *Cincinnati Life Inc. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

## III. Discussion

### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment

standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Plaintiffs as the non-moving parties with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

At all relevant times, Amanda Copeland was the District Manager for Aramark. Dkt. 143-1 at ¶ 3 (Copeland Declaration). Aramark is an independent contractor that executed a contract with the Indiana Department of Correction (IDOC) under which its responsibilities were limited to food services. *Id*. at ¶ 5. The contract provides as follows:

> **1.1. Overview of Contractor's Responsibilities**
>
> 1. The Contractor shall operate and manage food services for correctional facilities under the jurisdiction of the Department of Correction. These duties include purchasing food supplies and small wares, on-site storage of food supplies; delivery of food supplies; preparation of food; servicing food to offenders, students and staff; cleaning and maintaining a sanitary food service area and designated are for storage of food supplies.

*Id*.

Aramark is responsible for cleaning and sanitizing the food service area, dining areas, and food storage areas. Dkt. 143-1 at ¶ 5. Aramark is not responsible for the sanitization of any other part of the prison. *Id.* at ¶ 6. Aramark is also not responsible for providing hot water, soap, or cleaning supplies to inmates. *Id.* Hygiene items are supplied by the IDOC. *Id.* at ¶ 9.

Brandon Miller is the Food Services Director for Aramark at Pendleton. Dkt. 143-2 at ¶ 2 (Miller Declaration). He was instructed by the IDOC to implement a reusable cup and spork practice at Pendleton. *Id.* at ¶ 4. IDOC has used this practice at other facilities. *Id.* It is Miller's understanding that the practice was put into place to reduce the amount of waste and disposable utensils that inmates were flushing down toilets. *Id.* After he received the request, he ordered cups and sporks and had them distributed to the inmates. *Id.* It is his understanding that the cups and sporks are safe for inmate use. *Id.*

Mr. Miller has personally used the faucets in the kitchen and in the restrooms at Pendleton and those faucets always produced hot water. *Id.* at ¶ 5. Soap was also available. *Id.*

Ms. Copeland was not personally involved in the decision to issue cups or sporks at Pendleton. Dkt. 143-1 at ¶ 7. It has been her experience during her weekly visits that faucets in the kitchen and in the restrooms at Pendleton always produce hot water. *Id.* at ¶ 8.

Plaintiffs received 2 plastic tumblers (cups) and 1 spork if they were in general population and 1 plastic tumbler and 1 spork if they were in restricted housing. *Id.* at ¶ 11. The inmates are only required to bring the cup and utensils to and from the dining halls. *Id.*

Plaintiffs did not have hot water in their cells in J-cell house. Dkts. 164-1 at 1, 3, 5, 7: ¶ 4 (Plaintiffs' Declarations). When Plaintiffs leave their housing unit to go to the library or recreation and ultimately the dining hall, they carry the utensils in their hands because they have no pockets. *Id*. at 2, 4, 6, 8: ¶ 11. Plaintiffs receive soap from IDOC staff, approximately one bar a month. *Id.* at 1, 3, 5, 7: ¶ 6.

In June and July 2019, Plaintiffs Peacher and Wells complained of sore throats. Dkt. 164-1 at 15-19. They were seen by medical staff. *Id.* at 15, 18-19, 21. In January 2020, Plaintiff Douglas complained of a sore throat. *Id*. at 20.

Dr. Knieser is a physician currently employed by Wexford of Indiana LLC to provide services to inmates at Pendleton. Dkt. 143-3 at ¶ 3. (Dr. Knieser Declaration). He has never treated any of the Plaintiffs for any illness, infections, sickness, or health conditions that could conceivably be caused by unwashed cups and utensils. *Id.* at ¶ 5. He does not believe that it could be medically determined that the utensils or cups caused any health issues. *Id.* He is not aware of any inmates who have suffered any illness as a result of unwashed cups and utensils at Pendleton. *Id*. He also

denies ever talking to Plaintiffs about their expert disclosure, and he has never told them that he believed their allegations have merit. *Id.* at ¶ 6.[1]

**B.     Analysis**

Plaintiffs allege that the Defendants were deliberately indifferent to their health and safety by changing a policy in June 2019 so that reusable plastic cups and sporks would be used at Pendleton. They further allege that Defendants failed to provide them with the means to sanitize the utensils and that this caused them to become ill.

At all relevant times, Plaintiffs were convicted offenders. This means that the Eighth Amendment applies to their claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). The Eighth Amendment "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants [must be] deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation omitted); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). Minor injuries do not satisfy the objective component of an Eighth Amendment claim. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

---

[1] Plaintiffs' expert disclosures are not in the record, but in Peacher's and Wells' affidavits, they testify that "Dr. Knieser said to me that it was possible that the utensils, if not cleaned and sanitized, could cause my sickness, but he could not know for sure because he was not here when it happened." Dkt. 164-1 at 6, 8. Regardless, this alleged hearsay statement is not evidence that the utensils caused any illness.

### 1. Claims Against Aramark

Although a private entity, Aramark acts under color of state law and therefore may be liable for violating Plaintiffs' Eighth Amendment rights under the theory announced in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Walker*, 940 F.3d at 966. "Prevailing on such a claim requires evidence that a [Aramark] policy, practice, or custom caused" the deliberate indifference. *Id.* To prevail on a *Monell* claim, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020).

Plaintiffs have failed to designate evidence sufficient to create a genuine issue of material fact as to who initiated the policy on reusable cups and sports. The evidence is undisputed that Mr. Miller was directed by the IDOC to implement the policy. He complied by ordering the cups and sporks. Plaintiffs' reliance on an email from Mr. Miller to the IDOC and an order form to support their theory that *Aramark* initiated the policy is misplaced. Dkt. 164 at 5; dkt. 164-1 at 22-23. The email says nothing about who initiated the policy; rather, it indicates that Mr. Miller needed assistance in locating a vendor to obtain bids for Warden Zatecky's "project." Dkt. 164-1

at 23.[2] The email does not contradict Mr. Miller's sworn testimony.[3] Moreover, the undisputed fact that Mr. Miller ordered the sporks sheds no light on who requested the policy change.

Plaintiffs argue that "Aramark has a contractual obligation to ensure the health and safety of food service; service includes ensuring the utensils are clean and sanitized," dkt. 164 at 5, ¶ 7, but they have pointed to no contractual provision requiring Aramark to make sure inmates had the ability to clean their utensils once they were distributed. Hot water and soap are hygiene items that the IDOC is obligated to provide.

Even if Aramark had initiated the policy, which it did not, Plaintiffs have presented no evidence in support of their claim that the policy itself violated their constitutional rights. It is understood that prison officials must provide inmates "'the minimal civilized measure of life's necessities.'" *Isby v. Brown,* 856 F.3d 508, 521 (7th Cir. 2017) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)); *see also United States v. Weathington,* 507 F.3d 1068, 1073 (7th Cir. 2007) ("The Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons.") (internal quotation omitted)). "[T]he fact that the

---

[2] Miller's email states, "I have working the Warden Zatecky and Deputy Warden Alsip on a disposable program for the facility. We are looking at make a purchase of trays, tumblers, and sporks for the facility. We want to make sure that we order the product by policy. Miami facility did what we are looking at doing a few months ago and Aramark order the product and then invoiced the state. It was found after this took place that policy was not followed and we don't want to make that same mistake. I told Warden Zatecky I would get the bids that he needs for these project, however I need to know what vendors are in the states PeopleSoft system for me to reach out to for bids for this product. Could you help with some guidance on what vendors I should be reaching out to for bids? I have received a bid from Cooks Correctional not sure if they can be used or not." Dkt. 164-1 at 23 (errors in original).

[3] The parties refer to witness statements wherein some nonparties allegedly state that they overheard Mr. Miller say that he or Aramark requested the policy change. Dkt. 164 at 12,19; dkt. 169 at 3. No such statements are designated as evidence as required by Local Rule 56-1(e), nor do they otherwise appear to be part of the record, so they have not been considered by the Court.

plaintiff must eat with *plastic utensils* and drink from styrofoam cups fails to implicate the Constitution." *Armstrong v. Lane*, 771 F. Supp. 943, 949 (C.D. Ill. 1991) (emphasis in original). The IDOC decision to switch to reusable utensils to reduce waste and prevent inmates from flushing disposable utensils down toilets supports a legitimate penological interest. Aramark did not impose the change, nor is it unconstitutional. Therefore, Aramark is entitled to summary judgment.

### 2. Claims Against Copeland and Miller

As noted, to defeat summary judgment Plaintiffs must designate sufficient evidence to support the "objectively serious" and "subjectively culpable" components of their Eighth Amendment claims. Defendants assert that Plaintiffs have failed to present admissible evidence showing that they experienced objectively serious injuries. The Court need not consider whether a sore throat and associated symptoms are "objectively serious" because Plaintiffs' claims fail on other grounds.

Neither Ms. Copeland nor Mr. Miller was involved in making the decision to issue reusable cups and sporks at Pendleton. The record is undisputed that neither of them had any reason to believe that the IDOC's decision would harm Plaintiffs. Mr. Miller was aware that other IDOC prisons had used the same types of utensils. It is his understanding that the cups and sporks were safe. Both Defendants believe that inmates have had access to soap and hot water and were therefore able to clean their utensils. Plaintiffs have failed to create a genuine issue of material fact as to whether either Ms. Copeland or Mr. Miller were aware that the change in policy would pose a substantial risk to Plaintiffs' health and safety.

In addition, section 1983 allows for recovery only by a "party injured" by a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see also Armstrong v. Daily*, 786 F.3d 529, 553 (7th Cir. 2015) (a plaintiff must "establish one of the necessary elements of a constitutional tort: that the officer's act . . . caused any injury.") (internal quotation omitted). Plaintiffs have presented no evidence other than their own speculation that using the reusable sporks and cups *caused* them to become ill. A party opposing summary judgment must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Inferences supported only by "speculation or conjecture" will not suffice. *Skiba v. Ill. Cent. R. R. Co.,* 884 F.3d 708, 721 (7th Cir. 2018).

Plaintiffs contend that Nurse Davis "alerted" them to the "fact that the cause of my illness was the dirty utensils…" Dkt. 164-1 at 2, 4, 6, 8: ¶ 12. This inadmissible hearsay evidence is disputed, however, by Nurse Davis' own testimony that she did not recall treating any of the Plaintiffs for any illness caused by infections, she is not an infectious disease nurse, she is not qualified to give an expert opinion as to the cause of Plaintiffs' illnesses, and she has no opinion as to whether the sporks and cups caused Plaintiffs to become ill. Dkt. 170-2 at 16-18 (Kristi Davis Deposition).

News articles submitted by Plaintiffs published in March and October 2020 discussing the use of plasticware during the COVID-19 pandemic are disregarded because they are inadmissible hearsay. Dkt. 164-1 at 24-27; 34-37. *See* Fed. R. Evid. 802; *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013) (newspaper article offered as proof of the truth of the article's contents was "classic" inadmissible hearsay).

In sum, there is a complete lack of evidence showing that the use of the reusable utensils caused any of the Plaintiffs to become ill. Defendants are entitled to judgment as a matter of law because Plaintiffs have "failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof." *Celotex*, 477 U.S. at 323. Plaintiffs have failed to present evidence sufficient to create a genuine issue of material fact as to whether the Defendants were deliberately indifferent to a substantial risk of serious harm.

## IV. Conclusion

For the reasons discussed above, the Defendants' motion for summary judgment, dkt. [142], is **granted.** Judgment consistent with this Entry and with the Entry of January 27, 2020, dkt. [33] dismissing claims brought by Plaintiff Brown, shall now issue.

Plaintiffs' motion to enforce settlement agreement, dkt. [168], is **denied.** They allege simply that "the defendants still have not fulfilled their requirements under the confidential settlement agreement." *Id*. at 1. In response, Defendants have filed evidence showing that although the inmate dining room was closed during COVID-19, it has recently been reopened and the three-basin sink is in use in accordance with the terms of the agreement. Dkt. 172-1; dkt. 172-2.

IT IS SO ORDERED.

Date: 6/22/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

J. CALLAHAN
25714
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

L. DOUGLAS
202953
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

R. PEACHER
881627
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Q. WELLS
881139
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel